UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICHOLAS SALSKI,

   Plaintiff,        Case No. 24-
                Hon.

v.

YVONNE BRANTLEY and
JARED CHIROS, in their Individual
capacities,

   Defendants.

_____/

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com

_____/

## PLAINTIFF'S COMPLAINT & DEMAND FOR TRIAL BY JURY

  NOW COMES Plaintiff, NICHOLAS SALSKI, by and through his attorneys, THE MASTROMARCO FIRM, and hereby complains against Defendants, YVONNE BRANTLEY and JARED CHIROS, in their Individual capacities, stating as follows:

## COMMON ALLEGATIONS

1.     That Plaintiff is a resident of the County of Genesee, State of Michigan and is otherwise domiciled in the State of Michigan.

2.     That upon information and belief, Defendant Yvonne Brantley is a resident of the County of Bay, State of Michigan and is otherwise domiciled in the State of Michigan.

3.     That upon information and belief, Defendant Jared Chiros is a resident of the County of Genesee, State of Michigan and is otherwise domiciled in the State of Michigan.

4.     That the amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), excluding costs, interest, and attorney fees.

5.     That this Honorable Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

6.     That on or about September 23, 2018, Plaintiff entered the trooper training academy and began his employment with the Michigan State Police.

7.     That on or about April 3, 2019, Plaintiff graduated from the academy and received law enforcement license from the Michigan Commission on Law Enforcement Standards.

8.     That that Plaintiff was assigned to the MSP Flint Post.

9.     That at all times material hereto, Defendant Brantley was employed by

the Michigan State Police at the rank of first lieutenant.

10.     That at all times material hereto, Defendant Brantley was the Flint Post Commander.

11.     That when Plaintiff received the Flint Post assignment, he came under the supervision of Defendant Brantley.

12.     That at all times material hereto, Plaintiff performed the duties of a trooper in a satisfactory and/or an above-satisfactory manner.

13.     That on or about January 5, 2023, Plaintiff was socializing with other members of the law enforcement community.

14.     That over the course of that evening and into the early morning hours of January 6, 2023, Plaintiff observed Defendant Chiros sexually assault a female trooper, which would have constituted criminal sexual conduct.   See M.C.L. § 750.520e.

15.     That in May and June 2023, Plaintiff was interviewed as part of an internal affairs investigation into Defendant Chiros' unlawful behavior.

16.     That Plaintiff reported to the internal affairs investigators that Defendant Chiros had sexually assaulted a female trooper.

17.     That during the investigation into Defendant Chiros' unlawful behavior, Defendant Chiros was suspended after multiple people had come forward with allegations of sexual assault, assault, and other misconduct.

18.    That on or about May 12, 2023, Defendant Chiros began said suspension.

19.    That Defendant Brantley had a special relationship with Defendant Chiros.

20.    That Defendant Brantley has been discovered to have favored certain individuals in promotions, including giving applicants answers to examinations and interview questions, and had, in fact, secured the promotion of Defendant Chiros from the rank of trooper to sergeant.

21.    That it has since been disclosed that Defendant Chiros received preferential treatment and was inappropriately provided interview questions during that selection process.

22.    That on or about September 9, 2023, Plaintiff and three others received an email from Karen Hanson, Managing Assistant Prosecuting Attorney for Genesee County, stating in whole:

> Since we have yet to hear from MSP reference any Giglio concerns/clearances, I am unable to write for anything Salski would be involved in at this arrest.  I kinda think I shouldn't write for the R & O, because Salski was involved int eh R&O Charge.  Just out of curiosity, seems like Salski should not be doing anything kind of chase/arrest/etc … when they know we aren't writing for anything he does; so, are any of the arrests he is involved in legal?  Or, is he making illegal arrests because they know we aren't writing for him?  I see there is no submission for the fleeing and eluding, because Salski was the one arresting the driver.  So . . I am asking … was the driver arrested?  Am I missing something here?  We're struggling with all of these questions and no answers … and further thinking this through … maybe I should

deny the whole thing because Salski is the one who initiated the stop on the F&E ... right?

If it comes to it, we may get this case out of district, but if the problem isn't solved by trial, we will be dismissing ...

23.     That Plaintiff did not understand what Ms. Hanson's email was referencing as Plaintiff had not been alert to any "Giglio concerns."

24.     That "Giglio" refers to *Giglio v. United States*, 405 U.S. 150; 92 S. Ct. 763 (1972), which is a Supreme Court opinion from a line of cases that began with *Brady v. Maryland*, 373 U.S. 83; 83 S. Ct. 1194 (1963).

25.     That pursuant to these cases, a prosecutor is required to disclose to the criminally accused all exculpatory evidence, including evidence that may be used to impeach the prosecution's witnesses, such as police officers.

26.     That the *Giglio* case found that the reliability of a witness may be determinative of guilt or innocence and requires the prosecutor to disclose all evidence effecting credibility, which would include an allegation that a police officer had been untruthful.

27.     That it is a common practice of prosecuting attorneys to keep a list of law enforcement officers for whom the prosecutor must disclose prior incidents untruthfulness and is usually referred to as a *Brady-Giglio* or *Brady* or *Giglio* list.

28.     That placement on such a list makes it virtually impossible to act as a law enforcement officer within the jurisdiction as prosecutors will frequently decline

to pursue criminal charges filed by officers on the list.

29.     That Plaintiff had not received notice of being placed on the Genesee County *Brady-Giglio* list.

30.     That shocked by the contents of her email, Plaintiff spoke with Ms. Hansen via telephone.

31.     That during said telephone call, Ms. Hansen related to Plaintiff that several troopers were placed on the *Brady-Giglio* list after Defendant Brantley had informed Tammy Phillips, Chief Assistant Prosecuting Attorney, that Plaintiff and the other troopers had lied during their internal affairs interviews regarding Defendant Chiros.

32.     That Ms. Hansen further stated that Defendant Brantley refused to give specifics and that everyone who had a case with Defendant Chiros was placed on the list.

33.     That Defendant Brantley's allegations that Plaintiff and other troopers had lied during an internal affairs investigation are defamatory, fabricated, and malicious.

34.     That Defendant Brantley caused Plaintiff and other troopers to be placed on a *Brady-Giglio* list in retaliation for their reporting Defendant Chiros' inappropriate, unethical, and illegal behaviors.

35.     That as a result of being placed on said *Brady-Giglio* list and being

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

questioned whether he was illegally arresting citizens, Plaintiff was transferred to patrol in Shiawassee County, where there was no *Brady-Giglio* issue, which demonstrates the false and fabricated nature of the allegations.

36.     That on or about September 26, 2023, Plaintiff returned to patrolling areas in Genesee County.

37.     That Defendant Brantley and Defendant Chiros continued to retaliate against Plaintiff.

38.     That on or about October 26, 2023, Specialist Lieutenant Eric Shumaker conducted an interview of Defendant Chiros.

39.     That during said interview and unbeknownst to Plaintiff, Defendant Chiros retaliated against Plaintiff and Trooper Brandee Hart by falsely alleging that Plaintiff and Trooper Hart had had an off-duty motor vehicle accident on or about August 10, 2022, which was falsely reported to their insurance companies as occurring on private property and was not reported to law enforcement to avoid an investigation due to Plaintiff being intoxicated.

40.     That said allegations are false and defamatory.

41.     That on or about January 9, 2024, Plaintiff received a telephone call from Detective Sergeant Scott Singleton, who advised Plaintiff that he was under criminal investigation for felony insurance fraud and failure to report a crash for a traffic accident that occurred on or about August 10, 2022.

42.     That under Michigan law, an individual involved in a motor vehicle accident is not required to report a motor vehicle accident to law enforcement if (1) there is no death or injury; or (2) the apparent damage does not exceed $1,000.00. See M.C.L. § 257.622.

43.     That on or about August 10, 2022, Plaintiff was involved in a minor accident.

44.     That apparent damage to Plaintiff's vehicle appeared limited and not to exceed $1,000.00.

45.     That Plaintiff reported the accident to his insurance company.

46.     That after his motor vehicle was examined by professional mechanics, his vehicle had greater damage than expected and was not apparent.

47.     That any allegation that Plaintiff engaged in unlawful activity was false.

48.     That upon information and belief, Defendants made the retaliatory allegation that Plaintiff engaged in criminal behavior.

49.     That said allegations were made in retaliation for Plaintiff's prior participation in the internal affairs investigation regarding Defendant Chiros, during which Plaintiff reported that Sgt. Chiros had sexually assault another trooper.

50.     That when said allegations were made, they were made with knowledge that the statements were false.

51.     That learning of the criminal investigation and the contents of the

allegations caused Plaintiff very significant distress.

52.     That such allegations could have also ended Plaintiff's career as a law enforcement officer.

53.     That within a few days of the January 9, 2024 telephone call, Plaintiff received another call from D/Sgt. Singleton, who advised that he did not believe Plaintiff committed a crime, but that Internal Affairs was making him continue to investigate.

54.     That on or about January 22, 2024, D/Sgt. Singleton informed Plaintiff that criminal charges had been denied.

55.     That notwithstanding the denial of criminal charges, Plaintiff next learned from Assistant Prosecuting Attorney Sam Fleet and a court officer that Plaintiff was back on the *Brady-Giglio* list due to the accusations of insurance fraud.

56.     That on or about January 25, 2024, Plaintiff had been subpoenaed for a jury trial; however, prior to testifying APA Fleet informed Plaintiff that he had to disclose Plaintiff's status of being on the *Brady-Giglio* list to the defense attorney and judge.

57.     That on or about April 9, 2024, Plaintiff was the officer in charge for an investigation that was going to court.

58.     That Plaintiff did not receive a subpoena to testify, while his partner had been.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

59.     That when Plaintiff's partner asked an assistant prosecuting attorney why Plaintiff was not present, the attorney advised that he had been instructed not to subpoena Plaintiff.

60.     That on or about April 10, 2024, Plaintiff discussed the Genesee County court situation with First Lieutenant Fahad Qureshi, Defendant Brantley's replacement.

61.     That Plaintiff was advised that he could continue to make arrests and go to court, but according to Chief Assistant Prosecutor Phillips, Plaintiff would stay on the *Brady-Giglio* list until his internal affairs interview had been completed.

62.     That on or about April 11, 2024, Plaintiff sat for his internal affairs interview with Specialist Lieutenant Michael Bush.

63.     That at the conclusion of the interview, Spl./Lt. Bush informed Plaintiff that he believed Plaintiff to be truthful and he would notify 1st/Lt. Qureshi so that Plaintiff's status on the *Brady-Giglio* list could be resolved.

64.     That notwithstanding the fact that Defendants' employment with the Michigan State Police had ended, their actions continued to cause Plaintiff damage and affect his career.

65.     That on or about April 30, 2024, the retaliation against Plaintiff continued when the Michigan State Police proposed a ten-day suspension, falsely claiming Plaintiff violated the law when he failed to report the off-duty motor vehicle

accident.

66.     That on or about May 16, 2024, Plaintiff participated in a disciplinary conference at which Plaintiff received said retaliatory discipline.

67.     That Defendants' actions constitute free speech retaliation in violation of the First Amendment, 42 U.S.C. § 1983.

68.     That Defendants' actions constitute a denial of procedural due process in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

69.     That Defendants' actions constitute a denial of the equal protections of the law in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

70.     That Defendants' actions constitute a denial of substantive due process in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

71.     That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits, and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

72.     That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, mortification,

embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

73.     That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT I – FREE SPEECH RETALIATION IN VIOLATION OF THE FIRST AMENDMENT, 42 U.S.C. § 1983

74.     That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 73 of his Common Allegations, word for word and paragraph for paragraph, as if fully restated herein.

75.     That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

76.     That the First Amendment to the United States Constitution provides a right to freedom of speech and expression.  U.S. CONST. amend. I; *Keyishian v. Board of Regents*, 385 U.S. 589, 605-606; 87 S. Ct. 675 (1967).

77.     That at all times material hereto, Defendants acted under the color of State law.

78.     That Plaintiff engaged in constitutionally protected speech or conduct.

79.     That Plaintiff engaged in such protected speech or conduct by reporting Defendant Chiros' sexually assault a female trooper.

80.     That said speech addresses a matter of public concern as it is a matter of public concern whether law enforcement officers are conducting themselves lawfully in the performance of their duties. *Huber v. Leis*, 704 F. Supp. 131, 134 (S.D. Ohio 1989); *Marohnick v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986).

81.     That Plaintiff engaged in said speech as a private citizen and not as part of his job duties.

82.     That Plaintiff's interest in said speech outweighs any interest the Michigan State Police may have in regulating said speech, if any.

83.     That Defendants had knowledge of Plaintiff's protected activity.

84.     That Defendants took adverse action against Plaintiff, including, but not limited to, (1) securing Plaintiff's placement on the Genesee County *Brady-Giglio* list; (2) causing Plaintiff to be criminally investigated for allegedly engaging in insurance fraud; and (3) causing Plaintiff to be disciplined with a ten-day suspension.

85.     That Defendants' actions against Plaintiff would deter a person of ordinary firmness from engaging in such conduct.

86.     That a causal connection exists between Plaintiff's protected speech

and the adverse action.

87.    That Defendants would not have taken the same adverse actions against Plaintiff in the absence of Plaintiff's protected speech.

88.    That Defendants are not entitled to qualified immunity.

89.    That Plaintiff's right to freedom of speech is clearly established.

90.    That Defendants' actions constitute free speech retaliation in violation of the First Amendment, 42 U.S.C. § 1983.

91.    That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits, and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

92.    That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

93.    That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT II – DENIAL OF PROCEDURAL DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT, 42 U.S.C. § 1983

94.     That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 73 of his Common Allegations and paragraphs 74 through 93 of Count I, word for word and paragraph for paragraph, as if fully restated herein.

95.     That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

96.     That the Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1; *see also Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).

97.     That "[a] public employee is entitled to procedural due process—including the opportunity for a hearing—and substantive protections if he stands to lose a constitutionally protected property interest or liberty interest." *Houchens v. Beshear*, 441 F. Supp. 3d 508, 517 (E.D. Ky. 2020).

98.     That at all times material hereto, Defendants acted under the color of State law.

99.     That at all times material hereto, Plaintiff had a property interest in his continued employment.

100.    That Defendants interfered with Plaintiff's property interest in his continued employment by securing Plaintiff's placement on the Genesee County *Brady-Giglio* list by falsely accusing Plaintiff and others of lying during investigations into Defendants' improper and unlawful behavior.

101.    That Defendants interfered with Plaintiff's property interests without providing any due process.

102.    That when a protected property interest is implicated, "the right to some kind of prior hearing is paramount." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570; 92 S. Ct. 2701 (1972).

103.    That Defendants are not entitled to qualified immunity.

104.    That Plaintiff's property interests and Plaintiff's right to some kind of hearing prior to the infringement upon Plaintiff's property interest were clearly established.

105.    That Defendant's actions constitute a denial of procedural due process in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

106.    That as a direct and proximate result of Defendants' unlawful actions,

Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits, employer contributions, and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

107.    That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

108.    That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT III – DENIAL OF EQUAL PROTECTION OF THE LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT, 42 U.S.C. § 1983

109.    That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 73 of his Common Allegations, paragraphs 74

through 93 of Count I, and paragraphs 94 through 108 of Count II, word for word and paragraph for paragraph, as if fully restated herein.

110.   That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

111.   That the Fourteenth Amendment to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.

112.   That at all times material hereto, Defendants acted under the color of State law.

113.   That at all times material hereto and by virtue of his reports of Defendant Chiros' unlawful behavior and his participation in the related internal affairs investigation, Plaintiff belonged to an identifiable group of troopers.

114.   That Defendants systematically retaliated against members of that identifiable group, subjecting them to disparate treatment.

115.   That Defendants treated the identifiable group differently than similarly situated troopers outside the identifiable group.

116.   That Defendants lacked a rational basis for the different treatment.

117.   That Defendants pursued the disparate treatment for unlawful and unethical purposes in violation of the Michigan State Police rules and regulations

and with the intent to retaliate and harm Plaintiff and other members of said identifiable group.

118.    That as part of that disparate treatment, Defendants took adverse action against Plaintiff, including, but not limited to, securing Plaintiff's placement on the Genesee County *Brady-Giglio* list and falsely reporting Plaintiff had engaged in felony insurance fraud.

119.    That Defendants are not entitled to qualified immunity.

120.    That Plaintiff's equal protection right to be treated similar to those in similar positions and without irrational adverse action is clearly established.

121.    That Defendants' actions constitute a denial of equal protection of the law in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

122.    That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits, employer contributions, and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

123.    That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including,

but not limited to, emotional distress, mental anguish, shock, fright, mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

124.    That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT IV – DENIAL OF SUBSTANTIVE DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT, 42 U.S.C. § 1983

125.    That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 73 of his Common Allegations, paragraphs 74 through 93 of Count I, paragraphs 94 through 108 of Count II, and paragraphs 109 through 124 of Count III, word for word and paragraph for paragraph, as if fully restated herein.

126.    That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

127.    That the Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without

due process of law." U.S. CONST. amend. XIV, § 1; *see also Bazzetta*, 430 F.3d at 801.

128.   That the Due Process Clause of the Fourteenth Amendment protects a citizen's right to be free from government actions that shock the conscience and from arbitrary and capricious government actions. *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014).

129.   That Defendants engaged in a scheme to retaliate against individuals who reported Defendant Chiros' unlawful and unethical conduct and participated in the internal affairs investigation into Defendant Chiros' behavior.

130.   That Defendants was motivated by their personal relationships with each other and sought to intentionally harm those that crossed them.

131.   That Defendants further made false accusations that Plaintiff and other individuals who reported Defendant Chiros' unlawful and unethical behavior and participated in the internal affairs investigation had lied during said investigation and/or fabricated their statements to the Michigan State Police.

132.   That by doing so, Defendant caused Plaintiff and several individuals to be inappropriately placed on the Genesee County *Brady-Giglio* list.

133.   That Defendants further falsely reported to the Michigan State Police that Plaintiff had engaged in felony insurance fraud.

134.   That Defendants' actions shock the conscience and violate the

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

parmeter

decencies of civilized conduct.

135.   That Defendants' actions are so offensive that they do not comport with the traditional ideas of fair play and decency.

136.   That Defendants intended to injure Plaintiff and others.

137.   That Defendants' actions were premeditated and intentional.

138.   That Defendants are not entitled to qualified immunity.

139.   That Plaintiff's right to be free from conscience-shocking governmental action and/or arbitrary and capricious governmental action is clearly established.

140.   That Defendants' actions constitute a denial of substantive due process in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

141.   That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits, employer contributions, and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

142.   That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, mortification,

embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

143.   That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: July 15, 2024            By:   */s Victor J. Mastromarco, Jr.*
                                VICTOR J. MASTROMARCO, JR. (P34564)
                                KEVIN J. KELLY (P74546)
                                Attorneys for Plaintiff
                                1024 N. Michigan Avenue
                                Saginaw, Michigan 48602
                                (989) 752-1414

## DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, NICHOLAS SALSKI, by and through his attorneys,

THE MASTROMARCO FIRM, and hereby demands a trial by jury on all the above

issues, unless otherwise expressly waived.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: July 15, 2024          By:     /s Victor J. Mastromarco, Jr.
                                      VICTOR J. MASTROMARCO, JR. (P34564)
                                      KEVIN J. KELLY (P74546)
                                      Attorneys for Plaintiff
                                      1024 N. Michigan Avenue
                                      Saginaw, Michigan 48602
                                      (989) 752-1414